UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------X
RYAN HART,

                      Plaintiff,

   -against-

BUILDERS' GENERAL SUPPLY CO., TOMS
RIVER, INC.,
DANIEL WHITMEYER, individually,
CHRISTOPHER SICKLER, individually,
JOHN TEEHANS, individually,
DENNIS CONWAY, individually,
AARON JONES, individually, and
STEVEN FENTON, individually,

                      Defendants.
------------------------------------------------------------X

Civil Case No:

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, RYAN HART (hereinafter referred to as "Plaintiff" or "HART"), by and through his attorneys, DEREK SMITH LAW GROUP PLLC, hereby complains of Defendant BUILDERS' GENERAL SUPPLY CO., TOMS RIVER, INC. (hereinafter referred to as "Defendant" or "BUILDERS' GENERAL"), Defendant DANIEL WHITMEYER (hereinafter referred to as "WHITMEYER"), Defendant CHRISTOPHER SICKLER (hereinafter referred to as "SICKLER"), Defendant JOHN TEEHANS (hereinafter referred to as "TEEHANS"), Defendant DENNIS CONWAY (hereinafter referred to as "CONWAY"), Defendant AARON JONES (hereinafter referred to as "JONES"), and Defendant STEVEN FENTON (hereinafter referred to as "FENTON") upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff HART complains pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and New Jersey State Law, and seeks damages to redress the injuries Plaintiff suffered as a result of racial discrimination, retaliation, and a hostile work environment by Defendants.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over the Title VII claim pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over the related New Jersey State law causes of action asserted in this complaint pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because the events or omissions which gave rise to the claims asserted herein occurred within this Court's jurisdiction.

5. On or about October 26, 2016, Plaintiff submitted a Charge of discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC") (Attachment A).

6. On or about May 2, 2017, Plaintiff received a Right to Sue Letter from the EEOC (Attachment B).

7. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

8. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

9. Plaintiff is an individual African-American man, who is a resident of the State of New Jersey, Monmouth County.

10. At all times material, Defendant BUILDERS' GENERAL is a domestic corporation duly existing by the virtue and laws of the State of New Jersey, with it's principal place of business located at 15 Sycamore Avenue, Little Silver, New Jersey 07739.

11. At all times material, Defendant WHITMEYER was Plaintiff's immediate supervisor and held the power to hire and fire Plaintiff as well as control Plaintiff's daily work activities.

12. At all times material Defendant SICKLER worked with the Plaintiff in a non-supervisory position.

13. At all times material, Defendant TEEHANS was and is a Human Resources Director for BUILDERS' GENERAL and held the power to hire and fire Plaintiff as well as control Plaintiff's daily work activities.

14. At all times material, Defendant CONWAY, was Plaintiff's supervisor and held the power to hire and fire Plaintiff as well as control Plaintiff's daily work activities.

15. At all times material, Defendant JONES was Plaintiff's supervisor and held the power to hire and fire Plaintiff as well as control Plaintiff's daily work activities.

16. At all times material, Defendant FENTON worked with the Plaintiff in a non-supervisory position.

17. At all times material, Defendant BUILDERS' GENERAL employed all the above named individual Defendants (the above named corporate entity and individual Defendants

hereinafter referred to collectively as "Defendants").

## STATEMENT OF FACTS

18. On or about May 11, 2016, Defendants hired Plaintiff as a shed laborer.

19. At all times material, Plaintiff HART was an exceptional employee. Plaintiff HART performed his work assiduously and diligently.

20. In or around the Summer of 2016, Defendants' Supervisor WHITMEYER would constantly survey and heavily monitor HART'S daily activities, but leave other employees alone.

21. In or around July of 2016, Plaintiff HART and three employees casually talked in Defendants' main shed. Defendants' Supervisor WHITMEYER singled out HART and stated in an aggressive and abrasive tone, "every time I [WHITMEYER] see you [HART] you are standing around. Do some work." The other three employees—who were each white—were not reprimanded for the same conduct.

22. In or around August of 2016, Plaintiff's girlfriend and son stopped by Defendants' Little Silver location after Plaintiff got off work. Upon seeing that Plaintiff had a baby with a white woman, Defendants' Supervisor WHITMEYER shook his head and walked away, leaving Plaintiff embarrassed and hurt.

23. In or around late August of 2016, Defendants' employee FENTON, HART, and a customer were discussing Colin Kaepernick's protests. FENTON disagreed with Plaintiff's opinion and walked away from the conversation.

24. Immediately after, Defendants' employee FENTON announced in front of Defendants' staff, "I'm calling a meeting!" Defendants' Employee FENTON was not a manager and

had never called a meeting before.

25. In response, Defendants' Human Resource Director TEEHANS, Defendants' employee FENTON, Defendants' Supervisor CONWAY and Defendants' Supervisor WHITMEYER all went into TEEHAN'S office. Plaintiff was not brought into TEEHAN'S office.

26. After the "meeting" adjourned, HART approached Defendants' Supervisor WHITMEYER and inquired as to what was discussed. WHITMEYER refused to speak to HART and simply walked away.

27. On or about the same day, Defendants' Manager CONWAY approached Plaintiff and told Plaintiff that he and Defendants' employee FENTON would be separated.

28. Defendants never separated FENTON and Plaintiff, as promised.

29. Immediately following the aforementioned incident, Defendants' employees FENTON and SICKLER stopped HART in the middle of HART's work and stated "black lives matter" in a sarcastic, belittling and condescending tone. Plaintiff never laughed at or appreciated the "black lives matter" gestures, as Plaintiff understood they were being said in a retaliatory and derogatory fashion.

30. In or around August of 2016 through September of 2016, in an attempt to harass and intimidate Plaintiff, Defendants' employees FENTON and SICKLER told Claimant "black lives matter" almost every day.

31. In or around August of 2016 through September of 2016, HART attempted to report to Defendants' Supervisor WHITMEYER the racially-insensitive comments being made. WHITMEYER consistently refused to speak to HART whenever HART attempted to report the on-going hostile work environment.

32. On or about September 22, 2016, Defendants' employee SICKLER, stated to HART that

women could have sex with "100 white guys... as long as it wasn't one black guy." When asked why, SICKLER told HART he simply found it "disgusting. Just knowing a black guy was in *that* would ruin my dreams... I want pure, pure white."

33. Immediately thereafter, two of Defendants' employees laughed at SICKLER'S lewd comments and commented at Plaintiff, "Pure Aryan pussy!"

34. Plaintiff was deeply shocked and hurt by SICKLER'S comments and immediately reported the comment to Defendants' Human Resources Manager TEEHANS.

35. Upon reporting, Defendants' Human Resources Manager TEEHANS demanded that Plaintiff fill out a Human Resources "incident report." Plaintiff filled out a report, in which he outlined Defendants' employee SICKLER'S repulsive comment and the constant "black lives matter" gestures.

36. Defendants' took no reasonable or immediate action in response to SICKLER'S racially insensitive remarks.

37. In or around September of 2016, Plaintiff asked Defendants' Human Resources Manager TEEHANS if he could work in a separate department away from SICKLER. TEEHANS denied Plaintiff's reasonable request. Plaintiff then asked if he could work at different times so as to be separated from SICKLER. TEEHANS denied Plaintiff's reasonable request. Plaintiff then asked if he could work different weekends than SICKLER. Once again, TEEHANS denied Plaintiff's reasonable request.

38. In or around September of 2016, Plaintiff asked for a copy of the Human Resources incident report he had filled out on September 22, 2016. Defendants' Human Resource Director TEEHANS could not locate the incident report. Defendants' inattention and indifference to the hostile work environment left HART feeling hopeless, frustrated and

scared that the situation might escalate.

39. In or around September of 2016, Defendants threatened to retaliate against Plaintiff. Defendants' Supervisors JONES and WHITMEYER sought out Plaintiff and threatened that if Plaintiff ever brought up SICKLER'S racist comments Plaintiff would be terminated. Thereafter, Plaintiff feared management would retaliate against him for speaking up against racist behavior.

40. On or about September 24, 2016, upon coming into work, Plaintiff discovered spray paint in his locker which read "U A NIGGER" in black letters. Plaintiff was deeply hurt and shocked by the racist graffiti.

41. On the same day, Plaintiff, despite the fear of losing his job, reported the graffiti to Defendants' Supervisors WHITMEYER, LARESEN and CONWAY. All three supervisors observed the racist graffiti. WHITMEYER, LARESEN and CONWAY, collectively, did nothing to help rectify the situation.

42. Upon observing the racist graffiti, Defendants' Supervisor WHITMEYER told Plaintiff "there is no way to prove who wrote it, so nothing can be done."

43. As promised, Defendants failed to take any immediate or reasonable steps to combat the severe and pervasive hostile work environment. Instead, Defendants' Management created an atmosphere of fear and exclusivity.

44. In or around October of 2016, Defendants employee SICKLER continued to tell Plaintiff "black lives matter," almost every day.

45. In or around October of 2016, as a result of Defendants' indifference to the ongoing hostile work environment, Defendants' constructively terminated Plaintiff's employment.

46. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and

continues to suffer severe emotional distress and physical ailments.

47. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

48. As Defendants' conduct has been calculated, malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

49. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

50. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

51. Title VII states in relevant part as follows:

    "(a) Employer practices:

    It shall be an unlawful employment practice for an employer:

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

52. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon

the unlawful employment practices of the above named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender, national origin, and race.

53. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's race.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

55. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

56. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW JERSEY STATE LAW

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

58. New Jersey Law Against Discrimination ("LAD") (N.J. Stat. Ann. § 10:5-12) provides that "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: ... For an employer, because of the race… to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment

59. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's race.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER NEW JERSEY STATE LAW

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

61. New Jersey LAD (N.J. Stat. Ann. § 10:5-12 (d)) provides that it shall be unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere

with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."

62. Defendants violated the section cited herein by unlawfully retaliating against Plaintiff for reporting and opposing practices and acts forbidden under New Jersey LAD § 10:5-12.

### AS A FIFTH CAUSE OF ACTION FOR AIDING & ABETTING UNDER NEW JERSEY STATE LAW

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

64. New Jersey LAD (N.J. Stat. Ann. § 10:5-12 (e)) provides that it shall be unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

65. Defendants violated the section cited herein as set forth.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

### JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated: New York, New York
May 25, 2017

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By: _____

Alexander G. Cabeceiras, Esq.
30 Broad Street, 35th Floor
New York, New York 10004
(212) 587-0760
alexc@dereksmithlaw.com